**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTICT OF MISSISSIPPI
Northern Division**

**DORSYL WRIGHT**　　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**VERSUS**　　　　　　　　　　　　**CIVIL ACTION NO.: 3:20-cv-473-DPJ-FKB**

**JAMES R. MOORE, ET AL.**　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

**<u>Plaintiff's Memorandum Brief in support of her response in opposition to James R. Moore, Daniel Haggard, Eric Scott, and Allen Griffin's Motion for Judgment on the Pleadings based on Qualified Immunity</u>**

In accordance with L.U.Civ.R. 7(b)(4), the Plaintiff Dorsyl Wright, through counsel, files her Memorandum Brief in support of her response in opposition to James R. Moore, Daniel Haggard, Eric Scott, and Allen Griffin's Motion for Judgment on the Pleadings based on Qualified Immunity, as follows:

**Introduction**

The Defendants who have filed the motion for judgment on the pleadings are the following persons: Kemper County Sheriff James Moore and Kemper County Deputy Sheriffs Daniel Haggard, Eric Scott, and Allen Griffin. They have filed their motion pursuant to Fed.R.Civ.P. 12(c), moving for judgment on the pleadings, alleging qualified immunity on the federal civil rights claims brought against them in the complaint.

**The Legal Standard for a Rule 12(c) Motion for Judgment on the Plaeadings**

This Court in *Summers v. Hinds Cnty.*, Civil Action No. 3:20-CV-266-DPJ-FKB (S.D. Miss. December 21, 2020) has discussed the standard for Rule 12(c) in a qualified immunity case:

Defendants' motion arises under Federal Rule of Civil Procedure 12(c), the standard for which "is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). According to Defendants, that standard is heightened when addressing § 1983 claims where qualified immunity has been asserted. But "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly and Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

When considering a motion under Rule 12(c), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(c) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555

(citations and footnote omitted).

*Summers*, p.p.3-4.

**The Allegations contained in the Complaint**

The Plaintiff hereby quotes selected paragraphs of the complaint, as follows:

16.     Sometime prior to 2015, the plaintiff was summonsed to return to Mississippi to move in and take care of her ailing father, Odell Reed. Mr. Reed was, at that time, a resident of Kemper County and resided at 300 Walter Reed Rd, Preston, Mississippi 39354 ("Reed Residence").

17.      On or about January 15, 2015, the plaintiff packed up all of her belongings and moved them into her father's residence. From that date up until July 23, 2019, Ms. Wright continued to live in her father's residence, establishing a lawful tenancy there.[1] During that period of time, the plaintiff made various purchases of personal property which she placed in the Walter Reed residence.

---

[1] The Plaintiff has pleaded throughout her complaint that she was a lawful tenant of the property in question. See: *Paragraph 12* ("Plaintiff seeks declaratory and injunctive relief against the Sheriff and his deputies to enjoin them from arresting, evicting and prosecuting for trespass any lawful tenant of real property when the owner of the property has available the statutory remedy of eviction of the tenant found in Miss. Code Ann. § 89-7-27 et seq., and Miss. Code Ann. § 89-8-13 et seq."); *Paragraph 23* ("On or about July 11, 2019, Defendant Davis came to the residence where the plaintiff was living as a tenant…..."); *Paragraph 28* ("The Plaintiff was forcibly removed from her residence by the actions of the Defendants. There was never any proper notice to the Plaintiff, nor any eviction proceeding commenced to legally remove her from the premises in accordance with the laws of the State of Mississippi."); and *Paragraph 41* ("The Sheriff has failed to train his deputies on the statutory procedures regarding eviction of a tenant."). The Plaintiff further notes that in response to a public records request to the Sheriff's Office a " Victim Information Form' written and signed by Defendant Kathy Davis on July 18, 2019, stated that " Iimmediately told the tennant (sic)  I purchased [the] property." See Exhibit attached to Plaintiff's Response to the Defendants' Motion for Judgment on the Pleadings. Additionally, the Bench Opinion of the Kemper County Chancellor in the case of  *Erma Jean Anderson v. Dorsyl Wright*, Cause No. 2018-6,  stated that Ms. Anderson "claims that Wright has leased the real property owned by Reed on Walter Reed Road in Preston and that the tenant has been residing there for some months" and that  Wright  "testified that she's been living there for four and a half

21.     On July 11, 2019, pursuant to the foreclosure proceedings, Shapiro & Brown, LLC, held a public auction for the sale of the Reed Residence. Defendant Kathy Davis purchased the property at the auction sale.

23.      On or about July 11, 2019, Defendant Davis came to the residence where the plaintiff was living as a tenant and advised her that she had bought the house in a short-sale at foreclosure. At that time, Defendant Davis told the plaintiff that she could take her time in moving out of the house. The property included various appliances, such as a stove and a refrigerator. Defendant Davis showed Ms. Wright a gun she was carrying and the claimed that she now owned the personal property and that Ms. Wright could not sell any of it. Defendant Davis then called Defendant Deputy Sheriff Daniel Haggard to come to the plaintiff's residence, apparently to force her off the property. Before Defendant Davis left the premises, she showed Ms. Wright some "legal papers" which she claimed to be proof of her ownership of the property. Plaintiff Wright had never seen these papers before, nor did Defendant Davis leave her any copies. Without the consent of the plaintiff, Davis and Deputy Haggard entered the premises where Davis was allowed to take photographs. -Deputy Haggard advised Davis to give a statement [and] talk to an investigator.

26.     On July 23, 2019, Defendant Davis returned to the plaintiff's residence this time accompanied by Deputy Eric Scott. Scott handcuffed the plaintiff, telling her she was trespassing on the property, while Defendant Davis stated she

---

years." The Plaintiff further represents that her father allowed her to live at the residence, even after he left there, in exchange for her paying property taxes, caring for the property and making repairs.

"wanted her out now." Defendant Davis told Scott that she wanted to change the locks, to keep the plaintiff from entering the property. Scott gave the plaintiff twenty (20) minutes to get out all of her belongings, including her medicines. Scott and Davis oversaw a locksmith who changed the locks on the residence.

27.     On or about August 12, 2019, Ms. Wright went to see the Sheriff, Defendant James Moore, to file a complaint against the Deputy Officer who had wrongfully threatened, handcuffed and detained her, and assisted in her eviction and lock change. However, rather than address or accept the complaint, the Sheriff had one of his deputies, Defendant Allen Griffin, immediately and unlawfully handcuff Ms. Wright, who was then booked and incarcerated overnight, without benefit of having her prescriptions medicines or the benefit of a telephone call to her counsel.

**The Plaintiff was a tenant under the common law of Mississippi.**

The Plaintiff was a tenant under the common law of Mississippi. *Mississippi State Highway Commission v. Central Land & Rental Corp.,* 239 So.2d 335,337 (Miss.1970)( A lease is a legally enforceable conveyance of an estate in real property for a limited time and under certain conditions.); K.F. Boackle. *Mississippi Landlord and Tenant Law with Forms* § 1:1 (Definitions). Rent is  not an essential incident of relationship of landlord and tenant. *Id.;* also see  *State Auto. Ins. Co. v. Knuttila*, 645 N.W.2d 475,477 (2002)( Live-in caretaker for house was a "tenant-at-will" and, therefore, had a possessory interest that could not be terminated without notice; even though the caretaker did not pay cash for rent, he paid rent by performing services.); *Grant v. Detroit Ass'n of Women's Clubs*, 443 Mich. 596, 606 (1993) 505 N.W.2d

254, 258 (Caretaker allowed to occupy apartment in building in return for his services established existence of landlord-tenant relationship, to extent required to defeat summary judgment); *Hammerbeck v. Hubb*ard, 42 Wash.2d 204 (1953) 254 P.2d 479 (Where owner who lived in another state allowed her daughter and son-in-law to live on her farm without paying rent and they worked off the farm to make their living, relationship of parties was that of landlord and tenant for purpose of determining liability for damage caused by farm horse.); *May v. May*, 165 Ga.App. 461 (1983); 300 S.E.2d 215 (Landlord/tenant relationship existed between plaintiffs and their son who had been living on their farm where the parties never entered any formal lease or rental agreement, son took possession of the property with permission of plaintiffs, and during his 18–year possession son never paid rent, but did pay the property taxes and insurance for several years, as well as almost all improvements to the property, since under applicable statute, relation of landlord and tenant exists when owner of real estate grants to another the right to possess and enjoy use of such real estate, either for a fixed time or at will of grantor.); *McCullough v. Reyes*, 287 Ga.App. 483 (2007), 651 S.E.2d 810, 07 FCDR 2843(Owners of house where owner's sister lived with her family to care for her father were landlords not in possession of the property); and *King v. Reid*, 428 So.2d 611 ( Ala. 1983) (Evidence that decedent's daughters, who were devised decedent's homestead, agreed with decedent's widow to let widow remain in homestead if she paid taxes and insurance supported finding that landlord-tenant relationship was established.)

    The Defendants incorrectly allege in their memorandum that "all of the actions complained of grow out of [Plaintiff Kathy] Davis' actions as the rightful owner of the home who is effectively dealing with a trespassing squatter." Defendants' Memorandum, p.7. In response, the Plaintiff states that while she does not contest that Ms. Davis purchased the house

in which she was a tenant through a foreclosure sale, it is simply untrue that she was a "trespassing squatter." The Plaintiff notes that a document signed and filed by Defendant Kathy Davis with the Kemper County Sheriff's Office on July 18, 2019, refers to the Plaintiff as the "tennant (sic)."

The Defendants also incorrectly claim that the Plaintiff was not a tenant 'because she cannot establish herself as a bona fide tenant under the "Protecting Tenants at Foreclosure Act" ("PTFA")." Memorandum, p. 8. The PTFA is a federal law that protects tenants from evictions resulting from foreclosure on the properties they occupy. As the Plaintiff understands it, the purpose of the PTFA is to ensure tenants receive appropriate notice of the foreclosure and are not abruptly displaced. The federal PTFA overrides state foreclosure law that held that upon a foreclosure the tenant has no right to continued possession of the premises. The Plaintiff asserts that her rights as a tenant are established by Mississippi law, and it is irrelevant to this lawsuit whether she was a bona fide tenant under PTFA. A discussion of PTFA is found here. https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/protecting-tenants-foreclosure/pub-ch-ptfa.pdf

**For purposes of the Fourth Amendment, the Plaintiff, as a tenant, had a reasonable expectation of privacy.**

*U.S. v. Griffin,* 2011 WL 400256( E.D. Tex 2011) stated the following:

 A defendant must show he had a legitimate expectation of privacy in the area searched to establish a Fourth Amendment violation. *U.S. v. Ibarra*, 948 F.2d 903, 905 (5th Cir.1991). In determining whether a legitimate expectation of privacy exists, the Court should examine "whether the defendant has a possessory interest in the thing seized or the place being searched, whether he has the right to exclude

others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises." *Id.* at 906. The *Ibarra* court found that because the defendants did not own, lease or live in the house they did not have a reasonable expectation of privacy. *Id.* The Fifth Circuit has recognized that Fourth Amendment protections are "presumably applicable" to premises owned or used by an individual, thus creating a presumption of subjective and reasonable expectation of privacy. *U.S. v. Vega*, 221 F.3d 789, 796 (5th Cir.2000). "An overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Car*ter, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). Even if there for only a night, the inquiry is focused on whether the person has a legitimate expectation of privacy in the place searched. *Id.*

*Griffin*, *5.

Also see the following annotated cases: *U.S. v. Vega*, 221 F.3d 789, 795 (5th Cir. 2000) (As lessee of residence searched, defendant's expectation of privacy was reasonable, for Fourth Amendment purposes, inasmuch as it had a source outside of the Fourth Amendment by reference to both concepts of real property law and understandings that were recognized and permitted by society.); *United States v. Washington*, 573 F.3d 279 (6th Cir.2009) (defendant "lawfully residing" in uncle's apartment "for several months" had standing); and *Brown v. State*, 691 N.E.2d 438 (Ind.1998) (though "defendant may not have owned the home in which he was residing, defendant had been living in the home with his girlfriend for two and a half months,"

and thus he "did have a reasonable expectation of privacy" so as to have standing). Based on the above cited legal authorities and the facts pleaded in the complaint and in this memorandum, the Plaintiff has established that as a tenant she had a reasonable expectation of privacy in her residence protected by the Fourth Amendment.

**Qualified Immunity Standard**

As summarized by the Fifth Circuit,

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent . . . placed the statutory or constitutional question beyond debate. The basic steps of this court's qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the alleged conduct.

*Anderson*, 845 F.3d at 599-600 (footnotes omitted) (quotation marks omitted) (punctuation altered). Quoted directly from *Summers v. Hinds Cnty*, *supra*, page 5.

**Unlawful Search of Plaintiff's Residence**

The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." The Supreme Court has thus held that "'searches conducted outside the judicial process, without prior approval by judge or

magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). See also *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (internal quotation marks omitted) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."). "A search may be made without a warrant under certain circumstances, such as when there is valid consent; when the search is incident to a lawful arrest; when objects involved are in plain sight of an officer who is legally in the place of observation; under exigent circumstances; [and] when the property searched has been forfeited to the United States." 8A Fed. Proc., L. Ed. § 22:212 (*When warrantless searches allowed*) (citations omitted)(punctuation altered).

Controlling federal precedent clearly establishes that a police officer violates a resident's Fourth Amendment rights by entering the home without a warrant, a court order, or other justification, such as an exigent circumstance. *Katz, supra,* 389 U.S. at 357. Thus, federal law was sufficiently clear on July 18, 2019, to give Deputy Haggard "fair warning" that the Fourth Amendment prohibited him from physically entering the Plaintiff's residence without a warrant, a court order, or other justification.

There is nothing in the complaint to indicate that the Plaintiff consented to the search of her residence; that the search was incident to a lawful arrest or that there were exigent circumstances. Accordingly, the Plaintiff's Fourth Amendment Rights were clearly established such that it would have been clear to a reasonable officer that Deputy Haggard's conduct was unlawful in the situation that he faced on July 18, 2019, when he entered the Plaintiff's residence

without a warrant and, therefore, Deputy Haggard was not entitled to qualified immunity from Count 1 of the Plaintiff's complaint.

**Unlawful Seizure of Plaintiff's residence and personal contents inside the residence**

The Fourth Amendment proscribes unreasonable seizure of any person, person's home (including its curtilage) or personal property without a warrant. A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property," *United States v. Jacobsen*, 466 U.S. 109, (1984) such as when police officers take personal property away from an owner to use as evidence, or when they participate in an eviction. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). ("The right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all."); *Revis v. Meldrum*, 489 F.3d 273, 287 (6th Cir. 2007) ("[deputy's] actions in physically taking possession of [the plaintiff's] house by having the locks changed, retaining a key, and evicting [the plaintiff] demonstrably effected a seizure within the meaning of the [f]ourth [a]mendment"); *Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996) (noting that city's enforcement of alleged fake violations of housing code in order to evict tenants and board up buildings was interference with property interests cognizable under fourth amendment). "Mississippi's landlord lien statute does not authorize a landlord to use self-help to seize property of the tenant." *Bender v. N. Meridian Mobile Home Park*, 636 So.2d 385, 389 (Miss.1994)." *Crowell v. Butts*, 153 So.3d 719, 726 (Miss. App. 2013).

Count 5 of the complaint is entitled "Unconstitutional Taking of Property and Denial of Procedural and Substantive Due Process on July 23, 2019." Count 5 alleges the following:

> Deputy "Scott and Ms. Davis assisted a locksmith who changed the locks on the doors of the Plaintiff's residence. At the time of this incident numerous items of personal property belonging to the plaintiff were inside the residence, and she has still been unable to retrieve them from Ms. Davis. This was an unconstitutional seizure of property under the Fourth Amendment to the U.S. Constitution.
>
> This action was an unlawful taking of property under the Fifth Amendment and a violation of procedural and substantive due process under the Fourteenth Amendment

The acts of assistance by Deputy Scott associated with changing the locks on the doors of the Plaintiff's residence without a warrant from a judge pursuant to an eviction procedure was an unreasonable seizure under the Fourth Amendment, in violation of a clearly established right, thereby depriving Deputy Scott of the defense of qualified immunity.

**Unconstitutional taking and denial of due process**

As asserted in count 5 of the complaint, under the Fourteenth Amendment the Plaintiff had a right to due process, as provided for by the Mississippi tenant eviction statutes, before there may be a deprivation of her valid possessory interest in her residence, and that such right is clearly established. *United States v. James Daniel Good Real Property*, 510 U.S.43, 53-54, 114 S.Ct. 492; *Fuentes v. Shevin*, 407 U.S.67, 80, 92 S.Ct. 1983; *Thomas v. Cohen*, 304 F. 3d 563, 581( 6th Cir. 2001); *Fleming v. City of Bridgeport*, 935 A.2d 126, 147  284 Conn. 502, 530

(Conn. 2007). Deputy Scott does not enjoy qualified immunity on this claim. *Thomas v. Cohen, supra*, 304 F.3d at 581.

**Arrest without Probable Cause on July 23, 2019**

The Plaintiff may be subject to a warrantless arrest only if the officer had probable cause. The complaint, as well as the motion of the defendants, indicates that the Plaintiff, a lawful tenant, was arrested for trespass on the property for which she was a tenant. The Defendants' motion and memorandum did not assert an "arguable probable cause" defense for qualified immunity for Deputy Scott. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) ("I]f officers of reasonable competence could disagree on [probable cause], immunity should be recognized."). The Defendants apparently have made no argument to support the arrest other than their incorrect assertion that the Plaintiff was a "squatter."[2] Under those circumstances, Deputy Scott's arrest of the Plaintiff was without arguable probable cause, in violation of a clearly established right under the Fourth Amendment and, as a result, Scott did not have qualified immunity regarding Count 2 of the complaint.

**Fourth Amendment Excessive-Force Claim**

The Plaintiff has evaluated her excessive force claim in relation to her handcuffing. Even though she sought a medical evaluation, she believes it would be difficult to satisfy the standards enunciated by the Fifth Circuit in *Glenn v. City of Tyler*, which held that handcuffing too tightly, without more, does not amount to excessive force. 242 F.3d 307 (5th Cir.2001). also see *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir.2007)( "Minor, incidental injuries that occur in

---

[2] The Plaintiff made a public records request to the sheriff's office before filing suit. In response, she received a police incident report regarding the July 18 search of her residence, but she was not supplied an incident report for her July 23 arrest.

connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); *Deville v. Marcantel*, 567 F.3d 156,168 (5th Cir. 2009); and *Lockett v. New Orleans City*, 639 F.Supp.2d 710 (E.D. La. 2009). Therefore, she confesses Count 3 of the complaint.

**Arrest on August 12, 2019 without probable cause**

The Court should not take judicial notice of the purported arrest warrant. The Plaintiff has never seen this document. The Defendants have not demonstrated that the document is a public record. Moreover, the arrest warrant appears to be issued by the justice court judge based on the statement of the Defendant Kathy Davis, and not by a deputy sheriff. As noted above, the Plaintiff contends that she was a lawful tenant and could not be trespassing, as alleged by Ms. Davis. The Defendants have not indicated how they came to acquire this document. And, there is no corresponding court docket entry. Accordingly, the Court should not take judicial notice of this document for purposes of deciding this Rule 12 motion. Moreover, the Plaintiff should be allowed to plead that the sheriff knew or should have known that the Plaintiff was a tenant. A person can prevail on a false arrest claim "where officers responsible for bringing about an unlawful arrest knew that the arrest had issued without probable cause." *Williamson v. Curran*, 714 F.3d 432, 443-44 (7th Cir. 2013) (quoting *Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992)).

**Unlawful conditions of confinement**

Based on an assessment of what it means in terms of damages to the Plaintiff for having been deprived of her medication during her detention (blood pressure and pain medications), the Plaintiff has elected to withdraw Count 8 of the Complaint.

**Conspiracy**

The Plaintiff has alleged sufficient facts to allow the conspiracy count to remain in place. Clearly, the Sheriff's deputies and the Sheriff himself were working in collaboration with Defendant Kathy Davis to evict the Plaintiff. The Plaintiff further requests the Court to stay ruling on the conspiracy count to allow limited discovery to ascertain the personal relationships and interactions between sheriff's deputies and Kathy Davis and their knowledge of the Plaintiff's tenancy. *Hinojosa v. Livingston*, 807 F.3d 657, 674 (5th Cir. 2015). After such limited discovery the Plaintiff would be in a position to file a *Shultea* reply setting forth the conspiracy facts in more detail.

**Supervisor Liability**

The Plaintiff agrees that *Monell* liability cannot be established by respondeat superior. Count 9 not intended to make Sheriff Moore personally liable for the actions of the Sheriff's Department regarding failure to train.

**Conclusion**

For the reasons set forth above, the Court should deny the Defendants' Motion for Judgment on the Pleadings based on Qualified Immunity as to Counts 1, 2, 4, 5, 6, 7 and 10. Additionally, the Court should allow limited discovery on the conspiracy count, as described above.

Dated: January 4, 2021.

**DORSYL WRIGHT**
**PLAINTIFF**


 */s/  Samuel L. Begley, Esq.*
Samuel L. Begley, Esq.
( Miss. Bar No. 2315)
BEGLEY LAW FIRM, PLLC
P. O. Box 287
Jackson, MS 39205
Tel: 601-969-5545
begleylaw@gmail.com

W. David Watkins, Sr.
( Miss. Bar No.6986 )
Foreclosure Defense Staff Attorney
MS Center for Legal Services Corporation
P.O. Box 951
Jackson, MS 39205
(601) 427-3650
wwatkins@mslegalservices.org

*The Plaintiff's Attorneys*

## **Certificate of Service**

      I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following persons:

>William R. Allen (#100541)
>Lance W. Martin (MSB #105203)
>Allen, Allen, Breeland & Allen, PLLC
>P. O. Box 751
>Brookhaven, MS  39602-0751

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

>Kathy Davis
>300 Walter Reed Rd.
>Preston, MS 39354

       _/s/_ Samuel L. Begley, Esq.