UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DORSYL WRIGHT                                                    PLAINTIFF

V.                                         CIVIL ACTION NO. 3:20-CV-473-DPJ-FKB

SHERIFF JAMES R. MOORE, ET. AL                           DEFENDANTS

ORDER

This case involves a property dispute between Plaintiff Dorsyl Wright and Defendant

Kathy Davis that escalated and eventually involved law enforcement.  Wright says four officers

with the Kemper County Sheriff's Department, including Sheriff James R. Moore, violated her

constitutional rights and various state laws while helping Davis take possession of Wright's

property.  There are two pending motions: (1) Wright's motion to dismiss counterclaim [19] and

(2) the individual officers' qualified-immunity-based motion for judgment on the pleadings [26].

For the following reasons, the Court finds that Wright's motion to dismiss is granted, and Moore

and the deputies' motion for judgment on the pleadings is granted in part and denied in part.

I.      Background

In January 2015, Plaintiff Dorsyl Wright moved from Nebraska to her father's home in

Preston, Mississippi, to be his caretaker.  Compl. [1] ¶¶ 1, 16–17.  Her presence at the residence

has been disputed by family members and the current owner, Defendant Kathy Davis.

First, on August 23, 2016, Wright's father revoked the power of attorney he had

previously given Wright and gave it instead to Jean Anderson and two others.  State Ct. Order

[31-2] at 4.[1]  Anderson then sought a permanent injunction in state court to keep Wright off the

---

[1] Wright attached a state-court bench opinion to her response.  The opinion addressed disputes
between Wright and Anderson related to this property.  Both parties cite the document, and as a
public record, the Court may consider it under Rule 12(b)(6).

property.  *Id.* at 10.  The state court denied that remedy on June 18, 2019, but the court noted that it was "not of the opinion . . . that Wright has the legal right to stay at the home."  *Id.*

One month later, on July 11, 2019, Defendant Davis purchased the home through a foreclosure sale.  Compl. [1] ¶¶ 20–21.  That same day, Davis allegedly visited the property, told Wright she had purchased it in a short sale, and informed Wright "she could take her time" moving out.  *Id.* ¶ 23.  Then, on July 15, the property was conveyed to Davis through a substituted-trustee's deed.  *Id.* ¶ 22.

On July 18, Davis allegedly mailed Wright a certified letter instructing Wright to "vacate the premises no later than July 20, 2019."  *Id.* ¶ 23–24.  Davis also revisited the property that day and objected to Wright's efforts to sell the personal property Wright kept on premises.  *Id.* ¶ 25.  During this visit, Wright says Davis called Defendant Deputy Sheriff Daniel Haggard, to "apparently force [Wright] off the property," and together they entered the residence without Wright's consent so Davis could take photographs.  *Id.* ¶ 25.  Wright was not removed from the property.  *See id.* ¶¶ 25–26.  Wright believes this violated her Fourth Amendment rights.

On July 22, Wright says she received Davis's July 18 certified letter telling her to vacate by July 20.  Wright did not, however, leave, and the next day (July 23) Davis returned to the property.  This time, Defendant Deputy Sheriff Eric Scott accompanied Davis to allegedly assist with changing the locks and preventing Wright from entering the home.  *Id.* ¶ 26.  Wright claims that during this visit Scott handcuffed her, accused her of "trespassing on the property," and gave her 20 minutes to gather her belongings.  *Id.*

Believing that Scott "wrongfully threatened, handcuffed[,] and detained" her on July 23, 2019, Wright went to the Sheriff's Office on August 12, 2019, to file a complaint.  *Id.* ¶ 27.  Instead of allowing her to file a complaint, Wright says Defendants Sheriff James Moore and

Defendant Deputy Sheriff Allen Griffin immediately handcuffed Wright and incarcerated her overnight. *Id.* Wright also says she has never fully recovered her personal property despite "numerous demands" to Davis seeking their return. *Id.* ¶ 29.

Aggrieved by these events, Wright brought both federal- and state-law claims against Davis, Moore, Haggard, Scott, and Griffin, as well as Defendants Kemper County, Mississippi, and the Kemper County Sherriff's Department. Davis responded by asserting counterclaims against Wright for punitive damages, lost wages, and court costs. Davis Ans. [11] at 1, 9 (styled "Answer and Countersuit").

Wright now moves the Court to dismiss Davis's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Pl.'s Mot. [19]. At the same time, Moore, Haggard, Griffin, and Scott seek an order dismissing the federal claims against them under Federal Rule of Civil Procedure 12(c). Those federal-law claims include claims under 42 U.S.C. § 1983 for alleged violation of Wright's Fourth, Fifth, and Fourteenth Amendment rights and a conspiracy claim. Davis never responded to Wright's motion to dismiss counterclaims, but Defendants' motion is fully briefed.

II.    Motion for Judgment on the Pleadings

    A.    Standards

"The standard for deciding a Rule 12(c) motion [for judgment on the pleadings] is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). This standard requires the Court to "accept[] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome either motion, a plaintiff must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants argue that the standard for a Rule 12(c) motion is heightened when qualified immunity has been raised.  Defs.' Mem. [27] at 10–11.  But "[§] 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

Since the Rule 12 standard is not heightened for § 1983 claims, under both Rule 12(b)(6) and 12(c), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

B.      Analysis

1.      Confessed or Clarified Claims

Wright withdrew Counts 3 and 8.  Pl.'s Resp. [30] at 14.  She also clarified Count 9,

which advanced a failure-to-train claim against Sherriff Moore and Kemper County under

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Defendants

asserted that Moore could not be held individually liable under *Monell*, and Wright confirmed in

her response that the claim applied to Kemper County, not Moore individually.  Pl.'s Resp. [30]

at 15.  The claim will therefore be limited to Kemper County, and Defendants' motion is granted

to the extent it seeks dismissal for Moore in his individual capacity.[2]

2.      Disputed Section 1983 Counts

Counts 1, 2, 4, 5, 6, and 7 seek damages under 42 U.S.C. § 1983.  That statute provides a

claim against any "person" who, "under color of" state law, deprives another of his or her

constitutional rights.  42 U.S.C. § 1983.  According to Wright, Defendants violated her Fourth,

Fifth, and Fourteenth Amendment rights.

Defendants say Wright fails to state any constitutional violations against them, and, even

if she could, Defendants are otherwise entitled to qualified immunity.  A qualified-immunity

defense protects government officials from individual liability "as long as their actions could

reasonably have been thought consistent with the rights they are alleged to have violated."  *Good*

---

[2] Wright pled this claim against Moore and Kemper County.  Compl. [1] at 11.  But official-capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21 (1991).  Thus, Wright's claim against Moore in his official capacity duplicates her claim against the County.  *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (holding that district court was correct to "dismiss[] the official capacity claim as duplicative of the claim against [the municipality]").  The parties should address this at the appropriate time.

*v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

When a defendant asserts qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To do so, a plaintiff must show: "(1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Court may answer these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Regarding the second prong,

> [o]ur analysis of the clarity of relevant law is objective, meaning it does not focus on the specific defendant['s] knowledge. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). "[E]ven law enforcement officials who 'reasonably but mistakenly [commit a constitutional violation]' are entitled to immunity." *Glenn v. City of Tyler*, 242 F.3d 307, 312–13 (5th Cir. 2001) (quoting *Goodson*, 202 F.3d at 736).

*Zadeh v. Robinson*, 928 F.3d 457, 468 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 110 (2020).

For the law to be clearly established, the plaintiff must show that the legal principle has "a sufficiently clear foundation in then existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). In other words, "[t]he rule must be 'settled law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). And that "means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589–90 (citations and quotation marks omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citation omitted). Thus,

> [a] clearly established right is one that is "sufficiently clear that every reasonable
> official would have understood that what he is doing violates that right." *Reichle
> v. Howards*, 566 U.S. [658, 664] . . . (2012) (internal quotation marks and
> alteration omitted). "We do not require a case directly on point, but existing
> precedent must have placed the statutory or constitutional question beyond
> debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 . . . (2011).

*Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015).  Finally, this inquiry "must be undertaken in light of

the specific context of the case, not as a broad general proposition."  *Brosseau v. Haugen*, 543

U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

a.      Fourth Amendment Claims

The Fourth Amendment protects individuals "against unreasonable searches and

seizures."  U.S. Const. amend. IV.  Wright claims that Defendants violated her Fourth

Amendment rights by conducting (1) an unconstitutional search on July 18, 2019; (2) an

unconstitutional arrest and seizure of property on July 23, 2019; and (3) an unlawful arrest and

imprisonment on August 12 and 13, 2019.  Compl. [1] ¶¶ 31–34 (p. 7–8), 31–34 (p. 10).[3]  This

Order addresses those issues chronologically.

i.      July 18, 2019

In Count 1 of her Complaint, Wright alleges that Officer Haggard violated the Fourth

Amendment on July 18, 2019, by accompanying Davis into the home without a warrant.  *Id.* [1]

¶ 31.  At that point, the property had been lawfully conveyed to Davis through a substituted

trustee's deed.  *Id.* ¶ 22.  Moreover, Davis had papers with her that day "which she claimed to be

proof of her ownership."  *Id.* ¶ 25.

The Fourth Amendment "does not provide blanket protection against searches . . . on

private property.  Rather, the Fourth Amendment protects [only] those areas in which . . . citizens

---

[3] The Complaint featured two sets of paragraphs numbered 31 through 43.  For clarity, when
those paragraphs are referenced, page numbers will be indicated parenthetically.

have a reasonable expectation of privacy." *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998) (emphasis removed)).  Whether Wright had that expectation is tricky, so the Court will focus on whether Wright has met her burden of showing that she had a clearly established privacy interest such that Haggard's conduct was objectively unreasonable.

To determine whether a reasonable expectation of privacy exists, the Court applies a two-part test:  "[F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986).  The Fifth Circuit has identified five factors for answering these inquiries:

> (1) "whether the [citizen] has a [property or] possessory interest in the thing seized or the place searched;" (2) "whether he has the right to exclude others from that place," (3) "whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion," (4) "whether he took normal precautions to maintain privacy," and (5) "whether he was legitimately on the premises."

*United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001) (citing *United States v. Ibarra*, 948 F.2 903, 906 (5th Cir. 1991)).  "[N]o one of these factors is necessarily decisive, [but] together they represent the concerns that should be addressed in determining whether a defendant has standing to object to a search under the Fourth Amendment." *United States v. Cardoza-Hinojosa*, 140 F.3d 610, 616 (5th Cir. 1998).

Here, Wright may well have had a subjective expectation of privacy. *Cf. Ibarra*, 948 F.2d at 906 (finding there was no expectation of privacy where [defendants] did not maintain "any control over the premises" or contents in home and did not live there).  But Wright fails to show that a reasonable officer in Haggard's position would know "society [is] willing to recognize that expectation as reasonable." *California*, 476 U.S. at 211.

Wright attempts to meet this burden by first citing general Fourth Amendment law and then claiming that she was a tenant.  Starting with the Fourth Amendment, she cites three United States Supreme Court cases addressing warrantless searches:  *Katz v. United States*, 389 U.S. 347 (1967); *Arizona v. Gant*, 556 U.S. 332 (2009); and *Riley v. California*, 573 U.S. 373 (2014).  Wright then cites *United States v. Vega*, where the Fifth Circuit addressed privacy rights related to a warrantless search.  221 F.3d 789, 795 (5th Cir. 2000), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011).  Relevant here, the Fifth Circuit found as to one defendant in *Vega* that "[a]s lessee of the [searched] residence, [defendant's] expectation of privacy was reasonable inasmuch as it had 'a source outside of the Fourth Amendment . . . by reference to [both] concepts of real property . . . law' and 'understandings that are recognized and permitted by society.'"  *Id.* (quoting *Ibarra*, 948 F.2d at 906).  Notably, though, the court further noted that the defendant's presence at the property was not "wrongful."  *Id.* at 796.

While these cases address the Fourth Amendment as related to warrantless searches, "[t]he dispositive question [when determining whether the law is clearly established] is 'whether the violative nature of the *particular* conduct is clearly established.'"  *Mullenix*, 57 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 742).  Here, that would require a showing that clearly established law recognizes a privacy interest for individuals who remain in foreclosed property after the deed passes.

Wright never offers controlling authority on that point, arguing instead that she "was a tenant under the common law of Mississippi."  Pl.'s Resp. [30] at 5 (citing *Miss. State Highway Comm'n. v. Cent. Land & Rental Corp.*, 239 So. 2d 335, 337 (Miss. 1970)).  She then cites — without explanation—Mississippi Landlord and Tenant Law with Forms § 1:1, a secondary

source that includes the following definition: "Tenant means a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others."

Wright's only controlling authority for saying she was a tenant is *Central Land & Rental Corp.*, where the Mississippi Supreme Court held that a valid lease *instrument* existed between the owner and the tenant even though there was no rent. 239 So. 2d at 337. Unlike *Central Land & Rental*, Wright had no lease instrument with Davis or anyone else. And, more to the point, *Central Land & Rental* says nothing about tenant rights following foreclosure, much less privacy interests. As noted, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Wesby*, 138 S. Ct. at 589 (citations omitted). *Central Land & Rental* does not address the core issues in this case, and the other cases Wright cites are nonbinding and distinguishable.[4]

Conversely, Defendants argue that Wright had no post-foreclosure rights because she was not a bona fide tenant under the Protecting Tenants at Foreclosure Act (PTFA), Pub. L. No. 111-22, § 701(a), 123 Stat. 1632, 1660–61 (2012). The Act provides the minimum protections owed to bona fide tenants after foreclosure but excludes from the definition of bona fide tenants "[t]he mortgagor or the child . . . of the mortgagor." *Id.* § 701(b)(1). Because Wright was not a bona fide tenant under the Act, Defendants say she had no rights. Wright acknowledges that she was

---

[4] Wright also says she was a tenant because Davis described her as such in something she filed with the Sheriff's department. *See* Pl.'s Resp. [30] at 7; Victim Information Form [31-1]. The Court found no reference to this in the Complaint, so it is beyond the scope of review. But even assuming it had been pleaded, the document indicates that it was signed *after* the alleged search and seizure. Qualified immunity is an objective test. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson*, 202 F.3d at 736. The Complaint fails to suggest that Haggard knew about that document—or any claims to valid tenancy—before he accompanied Davis into the house she had purchased.

not protected by this federal act but says her rights were "established by Mississippi law." Pl.'s Resp. [30] at 7. But, as noted, she offers no state law addressing her post-foreclosure rights.[5]

At bottom, the burden is on Wright to "demonstrate the inapplicability of the [qualified-immunity] defense." *McClendon*, 305 F.3d at 323. And while she claims that she was a tenant with certain privacy rights, she cites no controlling legal authority suggesting that Haggard violated her rights by accompanying Davis into the property after the deed passed through foreclosure. *See Harris v. Jackson County*, 684 F. App'x 459, 462 (5th Cir. 2017) (holding that plaintiff failed to meet his burden of showing clearly established law and noting that "[i]mportantly, Harris fails to cite a single case in his appellate brief illustrating that the law is clearly established"). Specifically, she has not shown that a reasonable officer, armed with Haggard's knowledge at the scene, would know that Wright's privacy interests were at stake. Haggard is entitled to qualified immunity on Count 1.[6]

    ii.  July 23, 2019

On July 23, 2019, Defendant Deputy Scott accompanied Davis to the property and allegedly handcuffed Wright before giving her 20 minutes to gather her things and vacate the premises. *Id.* [1] ¶ 26. Scott and Davis then "oversaw the locksmith who changed the locks." *Id.* Wright claims that Scott violated her Fourth Amendment rights by unlawfully seizing the residence and her property and by subjecting her to an unlawful arrest. *Id.* ¶¶ 34, 39.

---

[5] Defendants also rely on nonbinding authority that squatters have no privacy interests. *See* Defs.' Mem. [27] at 9 (citing *United States v. Murray*, 53 V.I. 831, 847 (D.V.I. Aug. 2, 2010) (collecting cases and concluding that "virtually every court to consider the issue has found that a squatter lacks standing to contest a search of the structure in which he or she is squatting")).

[6] Mississippi common law and statutory law addressing property rights is complex, and though the Court questions Wright's claim for other reasons, this Order is limited to the arguments she presented.

a.      Seizure of Property

The Fourth Amendment protects unreasonable seizures of "persons, houses, papers, and effects."  U.S. Const. amend. IV.  So, as Wright notes, it protects against unlawful seizure of property, which "occurs when there is some meaningful interference with an individual's possessory interests in that property."  Pl.'s Resp. [30] at 11 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

At this point, the Court is not willing to dismiss this claim.  Scott never directly addressed the Fourth Amendment seizure-of-property claim in his opening memorandum, other than to say that there was no state action.  But if he assisted Davis in seizing Wright's personal property, as alleged, then state action existed.  *See Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (finding state action where officer's accompanied landlord during unlawful eviction that resulted in seizure of property).

In reply, Scott disputes the factual basis of the claim, contradicting the Complaint and asserting that he had nothing to do with changing the locks on Davis's house.  *See* Def.'s Reply [32] at 13 (citing Davis Ans. [11] at 3).  But under Rule 12(c), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 873 (5th Cir. 2021) (quoting *Doe v. MySpace*, 528 F.3d 413, 418 (5th Cir. 2008)).  The Court may not weigh the evidence.  Accordingly, based on the current legal arguments, it appears that the Complaint states a claim.  The Court therefore denies dismissal but grants Scott's alternative request for qualified-immunity-related discovery on the

property claims.[7]  *See Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (explaining when

qualified-immunity discovery is allowed).

b.      Unlawful Arrest

The result is different for Wright's unconstitutional-arrest allegation.[8]  Under the Fourth

Amendment, an arrest must be based on probable cause, which exists if, "at the moment the

arrest was made[,] . . . the facts and circumstances within [the officer's] knowledge and of which

they had reasonably trustworthy information were sufficient to warrant a prudent man in

believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379

U.S. 89, 97 (1964).

Wright repeats her argument that she was a lawful tenant and states that no probable

cause existed.  But she provides no legal argument beyond those conclusory assertions.  *See* Pl.'s

Resp. [30] at 13.  Notably, Wright identifies no controlling cases, or a robust consensus of

courts, suggesting that an officer in Scott's position would know that his actions were unlawful.

Generalities are insufficient to meet Wright's burden in defeating Defendants' qualified-

---

[7] For essentially these same reasons, the Court will take the same approach with the Fifth and Fourteenth Amendment takings and due-process claims in Count 5 related to Wright's personal property.

[8] Both parties assume that Scott arrested Wright when he temporarily handcuffed her.  *See* Defs.'s Mem. [27] at 12–14; Pl.'s Resp. [30] at 13.  That is not necessarily true.  Yes, she was seized because "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citing *Davis v. Mississippi*, 394 U.S. 721 (1969) and *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)).  But different standards apply to different types of seizures. "[A]n investigatory stop[] is a brief seizure that must be supported by reasonable suspicion," whereas "a full scale arrest must be supported by probable cause." *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014).  Notably, "the use of handcuffs to detain a suspect does not automatically convert an investigatory stop into an arrest requiring probable cause." *Brown v. Lynch*, 524 F. App'x 69, 76 (5th Cir. 2013).  In this case, however, the Court lacks sufficient information to know whether an arrest occurred.  Accordingly, the Court will track the parties' arguments and assume that probable cause was required.

13

immunity defense.  *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir.

2020).  Scott is therefore entitled to qualified immunity on Wright's unconstitutional-arrest claim

in Count 2.

### iii.     August 12 and 13, 2019

Wright says Moore and Griffin violated her Fourth Amendment rights when she went to

the Sheriff's office to file a complaint regarding the events on July 23, 2019, and Griffin

"unlawfully handcuff[ed]" her at Moore's direction.  Compl. [1] ¶ 27.  To address that assertion,

Defendants provide a document they identify as a warrant for Wright's arrest issued by the

Kemper County Justice Court.  Warrant [26-1]; Defs.' Mem. [27] at 16.  They ask the Court to

take judicial notice of the document and argue that because an outstanding warrant existed, the

arrest was constitutional.  Defs.' Mem. [27] at 16.

When deciding a Rule 12(c) motion, a court may consider evidence subject to judicial

notice.  *Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 304 (5th Cir. 2018).  The

Court may take judicial notice if the fact is "not subject to reasonable dispute because it: (1) is

generally known within the territorial jurisdiction[] or (2) can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

201(b).

To begin, it is "clearly proper" to take judicial notice of public records under Rule 201.

*Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Tr.*, 500 F.3d

454, 461 n.9 (5th Cir. 2007)).  Arrest warrants are public records, and courts routinely take

judicial notice of them.  *See, e.g.*, *Dent v. Methodist Health Sys.*, No. 3:20-CV-00124-S, 2021

WL 75768, at *2 (N.D. Tex. Jan. 8, 2021) (taking judicial notice of arrest warrant "[b]ecause the

[w]arrant is a public record that was filed in the Tarrant County court and bears the seal and

signature of the magistrate judge"); *Scott v. White*, No 1:16-CV-1287, 2018 WL 2014093, at \*3 (W.D. Tex. Apr. 30, 2018) (collecting cases of district courts in Fifth Circuit "tak[ing] judicial notice of arrest warrants for the purpose of deciding motions to dismiss"); *Roberts v. Wal-Mart La. LLC*, No. 15-0119, 2016 WL 6561523, at \*3 (W.D. La. Nov. 2, 2016) (recognizing arrest warrant as public record); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 906 (E.D. La. 2001) (taking judicial notice of an arrest warrant attached to defendant's motion to dismiss).

Here, Wright challenges the warrant's authenticity, but it is self-authenticating as it bears the seal and the signature of the issuing judge. *See* Fed. R. Evid. 902(1); *Dent*, 2021 WL 75768, at \*2 (taking judicial notice of arrest warrant in false arrest case); *see also Lynch v. Nowland*, No. 2:17-CV-43-JBV-JEM, 2019 WL 6828302, at \*2 (N.D. Ind. Dec. 13, 2019) (stating affidavits of probable cause and arrest warrant "bear the signature of a deputy clerk of that court indicating that the document is a true copy of the court record"). The Court will therefore take judicial notice of the warrant's existence. But because the facts within the warrant, namely the facts within Davis's affidavit, are subject to dispute, the Court's judicial notice extends only to the warrant's existence. Fed. R. Evid. 201(b).

Considering there was an outstanding warrant for Wright's arrest on August 12, 2019, Haggard and Griffin are entitled to qualified immunity on Wright's arrest claims. The Fifth Circuit recognizes that "[w]here an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (citations omitted). Since Wright's arrest was based on a valid outstanding warrant, it is not a constitutional violation, and Haggard and Moore are entitled to qualified immunity.

Likewise, Wright's alleged unlawful incarceration following the August 12, 2019 arrest presents no constitutional violation. *See* Compl. [1] ¶¶ 27, 33–34. "A false imprisonment claim is an attack on probable cause and thus focuses on the validity of an arrest." *Underwood v. Dunaway*, No. 2:17-CV-00168-KD-MTP, 2019 WL 4072401 (S.D. Miss. June 6, 2019) (citing *Cormier v. Lafyette City-Parish Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012)). Because "[Wright's] original seizure was . . . pursuant to a valid court order," her subsequent incarceration did not violate the Fourth Amendment. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Therefore, Moore and Griffin are entitled to qualified immunity on both Wright's unlawful arrest and imprisonment claims, as there is no constitutional violation.

Lastly, Wright brings a § 1983 conspiracy claim. Compl. [1] ¶¶ 42–43. "To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019); *see also Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No deprivation, no § 1983 conspiracy.").

The requirement of showing an agreement "must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982) (quoting *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979)). But, at the pleading stage, "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery*, 759 F. App'x at 314 (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1023–24 (5th Cir. 1982)).

The first step is to identify the alleged conspiracy Wright asserts. In Count 10, she "re-

alleges and incorporates" all prior allegations and then states that they "constitute 1 conspiracy," which she does not further identify.  Compl. [1] ¶¶ 42–43.  She does, however, clarify the claim in her response to Defendants' motion to dismiss, stating that the movants "were working in collaboration with Defendant Kathy Davis to evict the Plaintiff."  Pl.'s Resp. [30] at 15.  To the extent Wright has alleged a conspiracy beyond a conspiracy to evict, the failure to pursue that claim in her response constitutes abandonment.  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

Looking, then, to the conspiracy-to-evict claim, Wright has not pleaded a plausible claim as to Moore, Griffin, and Haggard.  Starting with Haggard, there are no allegations suggesting that he took any steps to evict Wright when he accompanied Davis into the home on July 18, 2019.  Haggard allegedly "entered the premises where Davis was allowed to take photographs," Compl. [1] ¶ 25, and Wright remained on the premises after Haggard departed.  But even assuming his conduct was somehow linked to a subsequent eviction, there are no plausible allegations suggesting that he agreed with Davis or any other Defendant to evict Wright.  *See Montgomery*, 759 F. App'x at 314 (holding that conclusory assertions of an agreement are not sufficient).

The only facts offered that relate to Moore and Griffin are those stemming from Wright's August 12 and 13, arrest and detention, which did not violate her rights.  And—more to the point—there is nothing in the Complaint suggesting that Moore or Griffin made any sort of agreement relating to the eviction that allegedly occurred almost three weeks before they had any contact with Wright.

Wright seems to know that these claims fall short and has requested a stay on Count 10 to allow "limited discovery" followed by "a *Shultea* [sic] reply setting forth the conspiracy facts in

more detail."  Pl. Resp. Mem. [30] at 15; *see Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.

1995) (en banc).  But "[o]ne of the most salient benefits of qualified immunity is protection from

pretrial discovery, which is costly, time-consuming, and intrusive."  *Backe v. LeBlanc*, 691 F.3d

645 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).

Accordingly, "[t]he district court need not allow any discovery unless it finds that plaintiff has

supported his claim with sufficient precision and factual specificity."  *Schultea*, 47 F.3d at 1434;

*see also Zapata*, 750 F.3d at 485 (holding that before a district court may order discovery, it

"must first find 'that the plaintiffs pleadings assert facts which, if true, would overcome the

defense of qualified immunity'" (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991 (5th

Cir. 1995)).  Wright is not entitled to discovery as to Moore, Griffin, and Haggard.

      The allegation against Scott is more difficult.  Wright asserts that:  Scott and Davis

showed up at the property together, Scott handcuffed Wright and informed her she was

trespassing, Davis told Scott she wanted to change the locks, Scott gave Wright 20 minutes to

remove her belongings, and Scott and Davis both "oversaw a locksmith who changed the locks

on the residence."  Compl. [1] ¶ 26.  That Scott showed up with Davis and allegedly aided in

Wright's removal could plausibly suggest a tacit agreement to evict, though the ultimate question

is whether they "agreed to deprive [Wright] of [her] constitutional rights and that such an alleged

deprivation actually occurred."  *Montgomery*, 759 F. App'x at 314.  As noted above, there are

factual issues regarding the events on July 23rd that will be addressed in limited discovery.  It,

therefore, makes sense to carry this claim forward as to Scott, at least for now.

III.    Motion to Dismiss

      Davis's answer appears to assert a counterclaim against Wright, as she styled her filing

"Answer and Countersuit."  Davis Ans. [11] at 1; s*ee* Fed. R. Civ. P. 13(a)–(b).  Wright argues

that this counterclaim should be dismissed under Rule 12(b)(6) because Davis fails to state a claim for relief as required under Rule 8(a).  Pl.'s Resp. [20] at 2.  Davis did not respond to Wright's motion, and the time to do so has long passed.  The Court will therefore substantively consider the motion without a response.  *See Johnson v. Pettiford*, 442 F.3d 917, 918–919 (5th Cir. 2006) (holding the district court may not grant a motion to dismiss simply because it is unopposed).

Under Rule 8(a)—which also governs counterclaims—Davis was required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Crancer v. Bear Creek Water Ass'n*, No. 3:17-CV-94-DPJ-FKB, 2018 WL 1973488, at *2 (S.D. Miss. Apr. 26, 2018).  The Court, like Wright, has scrutinized Davis's "Answer and Countersuit" and cannot find such a statement.  Pl.'s Resp. [20] at 2.  Accordingly, Davis fails to state a claim upon which relief can be granted, so her counterclaim must be dismissed pursuant to Rule 12(b)(6).  Wright's motion to dismiss is therefore granted.

IV.     Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Wright's Motion to Dismiss Counterclaim [19] is granted, and Moore, Haggard, Scott, and Griffin's Motion for Judgment on the Pleadings Based on Qualified Immunity [26] is granted as to all of Wright's federal-law claims against the individual officers in their individual capacities, except her Fourth and Fifth Amendment claims against Scott related to the alleged taking and seizure of her personal property on July 23, 2019.

The parties may conduct discovery regarding the latter claims for a 60-day period commencing from the date of this Order.

       **SO ORDERED AND ADJUDGED** this the 14th day of September, 2021.

                                       s/ *Daniel P. Jordan III*
                                       CHIEF UNITED STATES DISTRICT JUDGE